Mona Lynch                             *      IN THE
311 14th St NE
Washington DC 20002                    *      UNITED STATES

        Plaintiff                      *      DISTRICT COURT

           v.                          *      FOR THE DISTRICT

                                       *      OF COLUMBIA

Todd Blanche
Acting, U. S. Attorney General         *
U.S. Department of Justice
Civil Rights Division                  *
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530                 *
                                              Civil Action No.
        Serve on:                      *
        Civil Process Clerk
        United States Attorney's Office *
        555 – 4th Street, NW
        Washington, DC 20230           *

                                       *

        Defendant.
*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

**COMES NOW**, MONA LYNCH, by and through her attorney, Paul V. Bennett, Esq., and

Bennett Legal Services, Inc., and hereby sues the U.S. Department of Justice

and states as follows:

## JURISDICTION AND VENUE

1.    This action arises from allegations of illegal employment discrimination and retaliation,

      pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

      (hereinafter referred to as "Title VII").

2.    This Court has jurisdiction pursuant to Title VII.

1

3. That all the actions complained of herein took place at the at the Administrative Office of the United States Courts ("AOUSC") in the Thurgood Marshall Federal Judiciary Building in Washington, D.C.

4. That at all times relevant hereto, Defendant has been a federal government agency employing twenty (20) or more persons and is an "employer" within the meaning of Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about April 29, 2023, Plaintiff timely contacted Defendant's EEO Office (hereinafter "EEO") to file an EEO claim regarding her unwarranted discipline.

6. Following the DOJ's investigations with respect to her EEO complaint, Plaintiff requested hearings with the Commission under EEOC Case Nos. 570-2024-01036X.

7. On March 17, 2026, Plaintiff was issued a Final Agency Order with respect to Plaintiff's EEOC Complaint, Agency No. USM-2023-000969, EEOC Case No. 570-2024-01036X.

8. In accordance with Title VII, and the Code of Federal Regulations ("CFR)", Plaintiff properly exhausted her administrative remedies before timely filing suit.

## FACTS COMMON TO ALL COUNTS

9. Plaintiff is an African American female, and is a member of protected classes under Title VII. Defendant was aware at all times herein of Plaintiff's race, and sex.

10. From December 2017 through October 1, 2023, Plaintiff was employed as a Court Security Officer ("CSO") by Paragon Security Systems ("Paragon"), a private security contractor operating under a federal contract first at DC Superior Court location from December 4, 2017 to July 14, 2020, and then after at the Administrative Office of the

United States Courts ("AOUSC") in the Thurgood Marshall Federal Judiciary Building in Washington, D.C. After October 1, 2023, when Paragon lost the contract, Plaintiff became the employee of Walden Security at AOUSC location.

11. CSOs serve as Special Deputy U.S. Marshals authorized to carry firearms and perform security and law enforcement duties.

12. Plaintiff reported nominally to Paragon's Barbara Hawkins, District Supervisor, and Lawrence Frost, Contract Manager.

13. During the relevant period, Christopher Dammons served as the U.S. Marshals Service Judicial Security Inspector ("JSI"), and Contracting Officer's Representative ("COR").

14. At all relevant times, JSI Dammons exercised substantial control over the terms and conditions of Plaintiff's employment, including hiring, discipline, scheduling, and removal, such that he functioned as Plaintiff's joint employer and *de facto* an agent of Paragon. Mr. Dammons repeatedly interfered with contractor operations and personnel decisions.

15. JSI Dammons improperly and pervasively interfered with Paragon's hiring decisions, effectively acting as a decision-maker for Paragon. In anticipation of contract renewal, Paragon management acquiesced to his directives.

16. On or about July 22, 2022, acting outside the scope of his authority, JSI Dammons caused the hiring of his protégé, William Thomas, male.

17. JSI Dammons exercised authority over staffing decisions, including approving overtime assignments for special events.

18. The U.S. Marshals Service controlled Plaintiff's worksite and provided the tools, materials, and equipment necessary for her job performance.

3

19. Plaintiff was held to a different and more stringent standard than similarly situated employees, including CSO Daniel Lee, a Caucasian male.

20. On or about April 27, 2023, Mr. Dammons personally relieved CSO Lee from his post to allow him to move his vehicle, without notifying Plaintiff's supervisors.

21. In contrast, Plaintiff was subjected to investigation and discipline for similar conduct, despite having permission to leave her post.

22. From April of 2022 to December of 2023, CSO Lee was permitted to violate uniform standards without consequence, while Plaintiff was targeted for alleged uniform violations.

23. From April of 2022 to December of 2023, Mr. Dammons engaged in a pattern of harassment and intimidation toward Plaintiff. He interfered with Plaintiff's ability to perform her duties, including forbidding her from entering the Lead CSO office.

24. On or about April 7, 2023, he attempted to discipline Plaintiff based on incorrect or outdated post orders. JSI Dammons misunderstood the post orders

25. During the month of April of 2022, he made disparaging comments about Plaintiff's appearance, including criticizing her hairstyle as not "professional."

26. From April of 2022 to December of 2023, he publicly targeted Plaintiff and sought opportunities to discipline her.

27. After Plaintiff raised concerns on or about April 17, 2023 about Mr. Dammons' conduct, his behavior escalated.

28. Beginning on or about April 7, 2023, he directed Plaintiff's supervisors to discipline her for minor or fabricated infractions.

29.     From April 7, 2022 to December of 2023, he initiated or caused investigations into Plaintiff without factual basis.

30.     From July of 2022 to July of 2023, he interfered with staffing assignments and prevented Plaintiff from serving in roles such as Acting Lead CSO. Plaintiff was out on sick leave from July 2023 to October 2023. Mr. Dammons' harassment reassumed after October 2023. Plaintiff was seeing a therapist due to his harassment

31.     From April 25, 2022 to June of 2022, he influenced hiring decisions to favor preferred individuals.

32.     From April of 2022 to July of 2023, Plaintiff was subjected to unwarranted disciplinary actions and reassignment.

33.     Plaintiff suffered financial harm, including a reduction in pay, from October 1, 2023 to October of 2024.

34.     From October 1, 2023 to present, Plaintiff's employment tenure was improperly altered, resulting in loss of seniority and benefits.

35.     On or about April 17 and 18, 2023, multiple female and male CSOs, including Plaintiff, sought DS Hawkins's guidance on filing complaints against JSI Dammons alleging harassment, gender discrimination, and retaliatory targeting.

36.     On or about April 29, 2023, DS Hawkins informed CM Frost that CSO Lynch had filed an Equal Employment Opportunity ("EEO") complaint against JSI Dammons.

37.     On or about April 29, 2023, JSI Dammons became aware of the fact that Plaintiff had engaged in a protected EEO complaint, and its filing by CSO Lynch.

38. Shortly thereafter, and with particular intensity beginning in or about May 15 2023, JSI Dammons initiated and escalated a pattern of retaliatory and discriminatory conduct against Plaintiff.

39. At all relevant times, Plaintiff was performing her job satisfactorily, and no legitimate performance deficiencies were identified or communicated to her.

40. On or about December 19, 2023, JSI Dammons neglected essential duties, including properly deputizing CSOs and updating post orders, while simultaneously undermining Plaintiff's authority.

41. From April of 2022 to December of 2023, he fostered a hostile work environment by forming alliances and targeting employees who engaged in protected activity.

42. From April of 2022 onwards, JSI Dammons maintained an inappropriate personal relationship with CSO Monicamarie Hawkins, which influenced his treatment of other employees and operational decisions.

43. Beginning from April 2022 onwards, and in violation of the governing Statement of Work, JSI Dammons assumed direct supervisory control over CSOs and issued daily instructions.

44. On or about April 27, 2023, he demanded that DS Hawkins discipline Plaintiff based on unfounded allegations and insisted on issuing a Performance Standard Violation ("PSV") despite DS Hawkins's documented explanation that no violation had occurred.

45. At all times relevant herein, Plaintiff met and/or exceeded Defendant's legitimate job expectations.

## COUNT I
## <u>RACE DISCRIMINATION</u>
## <u>(Disparate Treatment)</u>
## Title VII of the Civil Rights Act of 1964, as amended,
## 42 U.S.C. § 2000e, *et seq.*

46. Plaintiff hereby restates and incorporates paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47. Plaintiff was qualified and satisfactorily performing her duties as a CSO with Paragon.

48. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her race (African American) – a protected class under Title VII.

49. That the aforementioned acts constitute unlawful practices pursuant to Title VII.

50. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race (African American).

51. That the unlawful employment practices complained of above were intentional.

52. That similarly situated male employees, specifically CSO Daniel Lee, outside the protected class were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, receiving public criticism, and being retaliated against.

53. Defendant's adverse employment actions to include Plaintiff's discipline were thereby motivated by discriminatory animus.

54. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

55.    That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT II
## GENDER DISCRIMINATION
### (Disparate Treatment)
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. § 2000e, *et seq.*

56.    Plaintiff hereby restates and incorporates paragraphs 1 through 45 of this Complaint as though fully set forth herein.

57.    Plaintiff was qualified and satisfactorily performing her duties as a CSO with Paragon.

58.    That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her sex/gender (female) – a protected class under Title VII.

59.    That the aforementioned acts constitute unlawful practices pursuant to Title VII.

60.    That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex/gender (female).

61.    That the unlawful employment practices complained of above were intentional.

62.    That similarly situated male employees, specifically CSO Daniel Lee and CSO William Thomas, outside the protected class were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, receiving public criticism, and being retaliated against.

63.    Defendant's adverse employment actions to include Plaintiff's discipline were thereby motivated by discriminatory animus.

8

64. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

65. That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### COUNT III
### RETALIATION
### (Adverse Actions and Protected Activity Deterrents)
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. § 2000e, *et seq.*

66. Plaintiff hereby restates and incorporates paragraphs 1 through 45 of this Complaint as though fully set forth herein.

67. On or about April 17 and 18, 2023, multiple CSOs, including Plaintiff, sought DS Hawkins's guidance regarding the filing of complaints against JSI Dammons, alleging harassment, gender discrimination, and retaliatory targeting.

68. On April 28, 2023, Richard West, a co-worker, walked Plaintiff around to the floor that Internal Affairs is located inside of Marshal Headquarters for Plaintiff to make her complaint.

69. On April 29, 2023, DS Hawkins informed CM Frost that Plaintiff had filed an EEO complaint against JSI Dammons.

70. On or about April 29, 2023, JSI Dammons became aware of Plaintiff's EEO complaint with Marshal Headquarters.

71. The subsequent adverse employment actions as set forth in the above-referenced facts common to all counts and *Supra* at ¶¶ 9-45, amounted to illegal retaliation, as

9

Defendant's actions were motivated to punish Plaintiff for engaging in legally protected activities and were intended to dissuade others from engaging in similarly legally protected activities. Indeed, the net effect was to likely dissuade others from engaging in legally protected activities.

72.    That the aforementioned acts of retaliation for complaining about illegal employment practices constituted unlawful employment practices pursuant to Title VII.

73.    That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her legally protected activities.

74.    That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

75.    As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT IV**
**HOSTILE WORK ENVIRONMENT**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42  U.S.C. § 2000e,** *et seq.*

76.    Plaintiff hereby restates and incorporates paragraphs 1 through 45 of this Complaint as though fully set forth herein.

77.    That the conduct of Defendant's management constituted unwelcome actions, and behavior that was hostile toward Plaintiff, specifically publicly humiliating comments about Plaintiff, and other challenges to include activism in the form of her EEO

10

protected activities was severe and pervasive making her job close to impossible to perform.

78. The aforementioned actions, and behavior were subjectively offensive to the Plaintiff, which prompted her complaints to EEO and management in an effort to alleviate the hostility.

79. That the effect of the practices complained of above were objectively offensive such that a reasonable person would find that the practices deprived Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender, age, and EEO protected activities.

80. That the unlawful employment practices complained of above were intentional, unwelcome, and personally hostile and offensive to Plaintiff.

81. That the aforementioned conduct of Defendant's employees was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and to create an intimidating, hostile and offensive working environment for Plaintiff.

82. That the discriminatory and retaliatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish.

83. That the intentional discriminatory and retaliatory actions of Defendants against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

84. That Defendant Department of Justice knew or should have known of the aforementioned conduct of its management against Plaintiff and failed to take prompt corrective action.

85.    That Defendant Department of Justice is vicariously liable for the conduct of its employees carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Mona Lynch, Plaintiff, demands judgment against Todd Blanche, Acting, Attorney General, U.S. Department of Justice as follows:

a.    Compensatory damages according to proof;

b.    Front pay and back pay;

c.    Restore lost seniority and employment benefits;

d.    Declaratory relief;

e.    Prejudgment and post judgment interest;

f.    Award attorney's fees and costs, including expert witness fees, as allowed by law;

g.    And for such other and further relief as this Honorable Court deems just and equitable.


Respectfully submitted,

 /s/ Paul V. Bennett_____
Paul V. Bennett, Esq. (DC Bar No. 427358)
Bennett Legal Services, Inc.
5457 Twin Knolls Road, Suite 300
Columbia, Maryland 21045
(410) 353-4994
pbennett@bennettlaw.net

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Mona Lynch, Plaintiff, hereby demands that this matter be tried by jury.

 /s/ Paul V. Bennett
Paul V. Bennett, Esq. (DC Bar No. 427358)